OPINION
{¶ 1} Appellant Dawn Mills appeals from the October 14, 2004, Judgment Entry of the Licking County Court of Common Pleas, Juvenile Division, which granted permanent custody to the appellee, Licking County Department of Job and Family Services [hereinafter the agency].
 STATEMENT OF THE FACTS AND CASE {¶ 2} Appellant is the biological mother of three children: Austin Speaks, Blake Mills and Catelynne Mills. The agency first became involved with appellant in November of 2002, pursuant to an investigation. The investigation revealed that appellant's paramour, Bryan Murphy, had abused appellant's youngest child Catelynne Mills and left bruises on her. At that time, a safety plan was developed with and signed by appellant. One of the conditions of the safety plan was that appellant agreed to remove Bryan Murphy from her home.
 {¶ 3} In February of 2003, appellee received another referral regarding appellant. The referral alleged that Bryan Murphy had once again abused Catelynne Mills. After investigation, appellee requested and was granted an ex parte order giving appellee emergency custody of appellant's three children. Austin Speaks was four years old and the whereabouts of his father, John Speaks, was unknown and remained unknown throughout the case. Blake Mills was three years old and his father Bryan Eakin was and remains incarcerated for murder and felonious assault. Catelynne Mills was one year old and paternity of Catelynne had not been established.
 {¶ 4} A complaint was filed on February 24, 2003, alleging that appellant's children were dependent. The three children were removed from appellant's custody following an emergency shelter care hearing held on February 24, 2003. The children were subsequently adjudicated dependent on May 12, 2003. By Judgment Entry filed May 13, 2003, the children were placed in the temporary custody of the agency.
 {¶ 5} A case plan was developed and implemented. The case plan that was developed addressed the following problems: appellant's drug use; appellant having allowed persons who are physically abusive to be around the children; appellant having been physically and verbally abusive towards the children; and establishing paternity of Catelynne Mills.
 {¶ 6} All three of the children were originally placed in foster care. Austin and Catelynne remained in the same foster home. Blake was subsequently placed with his paternal grandparents.
 {¶ 7} Initially, appellant tried to comply with case plan requirements. However, appellant was not truthful with her mental health counselors, as well as her drug and alcohol counselors. Transcript of Permanent Custody Hearing [hereinafter Tr.], pgs. 16-17. Thereafter, on October 7, 2003, appellant was convicted of driving under the influence [hereinafter "DUI"]. This was appellant's second DUI conviction. Appellant was sentenced to 180 days in jail, with 160 of those days suspended. Appellant was placed on probation for a period of three years. One of the terms of appellant's probation was that she submit to a random drug test. On March 2, 2004, and March 23, 2004, appellant tested positive for cocaine. In addition, in March, 2004, appellant failed to take at least one drug screen requested by her probation officer. A motion to revoke appellant's probation was filed and appellant admitted to violating the terms of her probation. Therefore, in April, 2004, appellant's probation was revoked and the 160 days sentence was imposed.
 {¶ 8} Subsequently, on June 17, 2004, appellant was convicted of complicity to commit aggravated robbery, a felony of the first degree. Appellant was sentenced to three years in prison. Prior to her incarceration on March 31, 2004, appellant became involved in a relationship with Dale Bayshore. Tr., pg. 12. Bayshore used illegal drugs, including cocaine and "meth." Id. On April 1, 2004, appellant admitted that she had been using cocaine on a regular basis for the past six months. Id. at 13, 17-18. Appellant admitted that she was high when the robbery occurred and that the money obtained from the robbery was used to buy crack cocaine. Appellant admitted that she would not have been involved in the robbery had she not been hanging out with the wrong people and using drugs. Appellant also admitted that she used drugs on March 30, 2004, the day before she was incarcerated. As a result of appellant's actions, appellant received a non-approved discharge from her drug and alcohol treatment program for not following through with after care recommendations. Id. at 16.
 {¶ 9} On May 18, 2004, the agency filed a motion for permanent custody of appellant's three children. A hearing was held on July 29, 2004, at which time a Magistrate took testimony from the social worker in the case, appellant's drug and alcohol counselor, appellant's felony probation officer and appellant. In addition, the Magistrate reviewed a written stipulation regarding testimony from appellant's defense attorney. On August 11, 2004, the Magistrate issued a Decision in which it recommended that permanent custody be granted to the agency.
 {¶ 10} Subsequently, appellant filed objections to the Magistrate's Decision. On October 14, 2004, the trial court issued a Judgment Entry in which it overruled appellant's objections and granted permanent custody of appellant's three children to the agency
 {¶ 11} It is from the October 14, 2004, Judgment Entry that appellant appeals, raising the following assignment of error:
 {¶ 12} "The trial court erred by granting permanent custody of appellant's three children to the licking county department of job and family services."
 {¶ 13} In her sole assignment of error, appellant argues that the trial court erred when it granted permanent custody of her three minor children to the agency. In so doing, appellant raises three specific issues: 1) whether the trial court violated its duty, imposed by R.C.2151.314(B)(2) and Juv. R. 7(F)(3), to find an appropriate relative to take custody of the children; 2) whether the trial court's decision that appellant will be away from her children for an unreasonable amount of time was itself unreasonable; and 3) whether the grant of permanent custody was in the best interests of the children.
 {¶ 14} As an appellate court, we neither weigh the evidence nor judge the credibility of the witnesses. Our role is to determine whether there is relevant, competent and credible evidence upon which the fact finder could base its judgment. Cross Truck v. Jeffries (February 10, 1982), Stark App. No. CA-5758. Accordingly, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. C.E. Morris Co. v. Foley Construction (1978), 54 Ohio St.2d 279.
 {¶ 15} Revised Code 2151.414(B)(1) addresses under what circumstances a trial court may grant permanent custody. This statute provides as follows:
 {¶ 16} "(B)(1) Except as provided in division (B)(2) of this section, the court may grant permanent custody of a child to a movant if the court determines at the hearing held pursuant to division (A) of this section, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody and that any of the following apply:
 {¶ 17} "(a) The child is not abandoned or orphaned or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.
 {¶ 18} "(b) The child is abandoned.
 {¶ 19} "(c) The child is orphaned, and there are no relatives of the child who are able to take permanent custody.
 {¶ 20} "(d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999."
 {¶ 21} Paragraph (E)(12) of R.C. 2151.414 states that if a court determines, by clear and convincing evidence, that the following exists, the court shall enter a finding that the child or children cannot be placed with either parent within a reasonable time or should not be placed with either parent: "(12) The parent is incarcerated at the time of the filing of the motion for permanent custody or the dispositional hearing of the child and will not be available to care for the child for at least eighteen months after the filing of the motion for permanent custody or the dispositional hearing.
 {¶ 22} "In determining the best interest of a child . . ., the court shall consider all relevant factors, including, but not limited to, the following:
 {¶ 23} "(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
 {¶ 24} "(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
 {¶ 25} "(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;
 {¶ 26} "(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
 {¶ 27} "(5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child."
 {¶ 28} In this case, the trial court granted permanent custody based upon a finding that appellant was incarcerated at the time that the motion for permanent custody was filed and would not be available to care for the child for at least 18 months after the motion was filed or from the dispositional hearing. See R.C. 2151.414(E)(12). In addition, the trial court found that the children had been in placement outside of the custody of a parent for 12 or more months in the past twenty-two months. As to best interests, the trial court found that the children had been out of the mother's custody for most of their lives and that they were in need of a legally secure and permanent placement. Essentially, the trial court found that appellant's own derailment of the attempts to re-unite appellant and her children had created instability that was not fair to the children or in their best interests. Magistrate's Decision, Aug. 11, 2004, affirmed by Judgment Entry, Oct. 14, 2004.
 {¶ 29} Appellant first challenges the trial court's grant of permanent custody to appellee by arguing that the trial court violated R.C.2151.314(B)(2) and Juv. R. 7(F)(3) because the trial court, the social worker and the guardian ad litem failed to investigate whether any family members were suitable for placement.
 {¶ 30} Revised Code 2151.314(B) concerns shelter care hearings. It states that when a court conducts a shelter care hearing, "the court shall determine whether there are any relatives of the child who are willing to be temporary custodians of the child. If any relative is willing to be a temporary custodian, the child would otherwise be placed or retained in shelter care, and the appointment is appropriate, the court shall appoint the relative as temporary custodian. . . ." R.C.2151.314(B)(2).
 {¶ 31} Juvenile Rule 7(F)(3) states the following:
 {¶ 32} "Detention hearing.
 {¶ 33} "(1) Hearing: time; notice. When a child has been admitted to detention or shelter care, a detention hearing shall be held promptly, not later than seventy-two hours after the child is placed in detention or shelter care or the next court day, whichever is earlier, to determine whether detention or shelter care is required. . . .
 {¶ 34} "(3) Hearing procedure. The court may consider any evidence, including the reports filed by the person who brought the child to the facility and the admissions officer, without regard to formal rules of evidence. Unless it appears from the hearing that the child's detention or shelter care is required under division (A) of this rule, the court shall order the child's release to a parent, guardian, or custodian. Whenever abuse, neglect, or dependency is alleged, the court shall determine whether there are any appropriate relatives of the child who are willing to be temporary custodians and, if so, appoint an appropriate relative as the temporary custodian of the child. The court shall make a reasonable efforts determination in accordance with Juv. R. 27(B)(1)."
 {¶ 35} However, this issue is not pertinent to the issue raised in the assignment of error. The assignment of error concerns the grant of permanent custody. Revised Code 2151.314(B) and Juv. R. 7(F)(3) impose duties on the trial court in regard to shelter care hearings. They do not impose duties relative to permanent custody hearings. See In ReHalstead, Columbia App. No. 04 CO 37, 2005-Ohio-403.
 {¶ 36} Further, even if this court would assume arguendo that there is such a duty, the record reflects that the trial court and the agency fulfilled this duty. In its Judgment Entry granting the agency emergency shelter care of the children, the trial court stated that it had considered the report of investigation. That report indicated that appellant had stated that she was unable to name any relatives with whom the children could be placed. At that point, the trial court fulfilled its duty under R.C. 2151.314(B)(2) and properly placed the children in appellee's custody. See In Matter of Knotts, (Jan. 27, 1997), Mercer App. Nos. 10-96-12, 10-96-13, 10-96-14, 1997 WL 38084.
 {¶ 37} However, appellant contends that the agency had a continuing duty to investigate and determine whether there was a relative with which the children could be placed. Specifically, appellant contends that the agency should not have taken appellant's word for it that appellant's mother (the children's grandmother) was not a suitable relative with whom to place the children. Appellant asserts that the agency should have investigated placement with appellant's mother despite appellant's allegations that she had been physically and verbally abusive when raising appellant.
 {¶ 38} The record shows that the agency did investigate placement with relatives. First, one of the children, Blake Mills, was placed with his paternal grandparents. Further, the record shows that the agency's social worker considered appellant's relatives for possible placement. At the permanent custody hearing, the social worker testified about her efforts.
 {¶ 39} The social worker's testimony shows that the agency pursued at least five possible placements as given to them by appellant. Tr. at 39. One of those possible placements was the fiancé of Appellant's brother, who had passed away. That person was contacted but was not able to commit to taking the children because of her own situation. The agency attempted to contact appellant's living brother but was unable to do so as neither appellant nor her mother had his contact information. Id.
 {¶ 40} The social worker confirmed that the agency did not consider the maternal grandmother as a possible relative placement option in the beginning of the case because appellant had reported that she did not want her children placed with her mother. Id. Appellant indicated that she did not want her children placed with her mother because her mother was both physically and verbally abusive towards her. Appellant reported that her father was an alcoholic. Tr. at 40. Only after all relative placement options were exhausted did appellant request that her mother be considered as a placement option. The social worker advised appellant's mother that the agency would not consider her as a relative placement and she would have to get an attorney if she intended to pursue custody. Id. The record shows no attempts by the maternal grandmother to pursue custody of the appellant's children.
 {¶ 41} Second, appellant argues that the trial court's decision that appellant will be away from the children for an unreasonable amount of time is itself unreasonable. Appellant is essentially challenging the trial court's finding that the children cannot be placed with appellant within a reasonable period of time or should not be placed with appellant based upon a finding that appellant is incarcerated and will not be available to care for the children for at least 21 months from the date of the filing of the motion for permanent custody.[1]
 {¶ 42} A review of the record reveals that the trial court found that the children had been in placement outside the custody of a parent for 12 or more months in the past twenty-two months and that the children could not and should not be placed with either parent at that time or within a reasonable period of time. These findings are alternate grounds upon which to base the grant of permanent custody, R.C. 2151.414(B)(1)(a) and (d) respectively. Either of these findings, if supported by the evidence, is sufficient in and of itself to base a grant of permanent custody pursuant to R.C. 2151.414(B)(1).
 {¶ 43} Appellant does not appeal the trial court's finding that the children were in the temporary custody of appellee for 12 or more of the past consecutive 22 months. Such a finding is enough to satisfy the requirements of R.C. 2151.414(B)(1). See In re Whipple Children, Stark App. No. 2002CA00406, 2003-Ohio-1101. Further, the trial court's finding that the children were in the custody of appellee for 12 or more of the past consecutive 22 months is supported by the record.
 {¶ 44} Accordingly, this court need not address appellant's issue on its merits because even if appellant were correct, it would not justify a reversal of the trial court's decision. However, when this court reviews the merits of the issue raised by appellant, no reversible error is revealed. In finding that appellant would not be available to care for her children for at least 21 months, the trial court reasoned as follows:
 {¶ 45} "[Appellant] was incarcerated at the time of the filing of the motion (May 18, 2004) and will be incarcerated until at least late August, 2005 (15 months) after which she will not be available to parent the children for at least six (6) months for a total period of unavailability of 21 months, assuming all future events most favorable to the [appellant]." Magistrate's Decision, Aug. 11, 2004, affirmed by Judgment Entry, Oct. 14, 2004.
 {¶ 46} When this court reviews the findings of the trial court concerning appellant's incarceration and earliest time at which appellant could care for the children, we find that the trial court's finding was not unreasonable and is supported by the record.
 {¶ 47} Third, appellant contends that the grant of permanent custody to appellee was not in the children's best interests. Further, appellant asserts that a trial court cannot make a finding pursuant to R.C.2151.414(D)(3) unless the children have been in the agency's custody for at least 22 months.
 {¶ 48} We will first address appellant's assertion that a trial court cannot make a finding pursuant to R.C. 2151.414(D)(3) unless the children have been in an agency's custody for at least 22 months. We disagree with this assertion. The statute states that a trial court may consider the custodial history of the child in determining what is in the child's best interest, including whether the child has been in the custody of the agency or private child placing agency for 12 out of the prior 22 months. R.C. 2151.414(D)(3). The statute does not require that the child be in the custody of the agency for 22 months. The statute only requires that the child be in an agency's custody for 12 out of the prior or last 22 months. The 22 month time period merely limits the time period in which the trial court should look to when considering if the child has been in an agency's custody for 12 months.
 {¶ 49} As to the best interests of the children, we find that the trial court's decision that it is in the best interests of the children that permanent custody of the children be granted to appellee is supported by competent, credible evidence.[2]
 {¶ 50} In this case, the children did have a strong bond with appellant. However, a social worker assigned to the case testified that Austin and Catelynne also have a strong bond with the foster parents and Blake is equally bonded with his paternal grandparents with whom he has been placed. The children are bonded to each other and are able to visit each other on a regular basis. Further, the social worker testified that the children are getting along better now and that she believed it was due to the stability being experienced while outside of appellant's home. The children have not displayed difficulties forming relationships with others.
 {¶ 51} The children, who were five, four and two at the time of the hearing, were not able to express an opinion as to their wishes. However, the guardian ad litem assigned to the children recommended that appellee be granted permanent custody. The Guardian ad Litem stated in his report that appellant continued to make poor decisions, as demonstrated when she tested positive for cocaine, when she was convicted of DUI and, most recently, when she was convicted of complicity to commit aggravated robbery. In addition, she was not able to comply with the case plan. The guardian ad litem believed that the children would be able to adjust well to a new home. Guardian Ad Litem Report, June 29, 2004.
 {¶ 52} As to the custodial history of the children, the record shows that the children had been in the custody of appellee for over 15 consecutive months at the time of the hearing. During that time, appellant's situation worsened despite appellant's participation in counseling and parenting classes. The record does show that appellant's parenting skills improved as a result of the parenting classes but during this same time period, appellant was not truthful with her counselors and committed a felony for which she is now serving a three year prison sentence. Further, even if appellant were to obtain early release, by her own testimony, appellant would not be prepared to care for the children for 21 months from the date of the permanent custody hearing.
 {¶ 53} Thus, upon review of the record, we find that the trial court's finding that it is in the best interests of the children for permanent custody of the children to be granted to appellee is supported by competent and credible evidence.
 {¶ 54} For the foregoing reasons, appellant's sole assignment of error is overruled.
 {¶ 55} The judgment of the Licking County Court of Common Pleas, Juvenile Division, is affirmed.
Edwards, J., Boggins, P.J. and Hoffman, J. concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Licking County Court of Common Pleas, Juvenile Division, is affirmed. Costs assessed to appellant, Dawn Mills.
[1] This 21 month estimate assumes that appellant is released prior to serving her complete three year sentence and assumes all other future events most favorably to appellant.
[2] See R.C. 2151.414(D), supra.